

FILED

DEC 1 8 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**CLEAR SKY CAR WASH, LLC**
**et al.,**

      **Plaintiffs,**

v.                               **Civil Action No. 2:12cv194**

**CITY OF CHESAPEAKE,**
**VIRGINIA, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is currently before the Court on several motions to dismiss: (1) Defendants Greenhorne & O'Mara, Inc. ("Greenhorne"), Thomas Copeland ("Copeland"), Evelyn Jones, and Daniel Jones's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7 (Docket No. 7); (2) Defendant City of Chesapeake, Virginia's ("City") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket No. 12); (3) Defendant Carole Gillespie's ("Gillespie") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and upon the principle of Qualified Immunity (Docket No. 24); (4) Defendant United States Department of Transportation's ("USDOT") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket No. 29); and (5) Defendant Virginia Department

of Transportation's ("VDOT") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket No. 31). The motions have been fully briefed and are now ripe for decision. For the reasons stated herein, the Court **GRANTS** the above motions to dismiss.

## I.   FACTUAL HISTORY[1]

Plaintiffs Cleary Sky Car Wash LLC ("Clear Sky") and Clear Sky Car Wash Operating LLC ("Clear Sky Operating") are each limited liability companies duly authorized by the Commonwealth of Virginia. Plaintiffs Samuel Jacknin ("Jacknin") and Charles Einsmann ("Einsmann") are co-founders, co-organizers, and co-managers of Plaintiffs Clear Sky and Clear Sky Operating. Additionally, Plaintiff Jacknin acts as the managing agent of both Plaintiffs Clear Sky and Clear Sky Operating. Plaintiffs Clear Sky and Clear Sky Operating have operated a car wash business located at 920 Great Bridge Boulevard, Chesapeake,

---

[1] The facts recited here are drawn from Plaintiff s' Complaint and are assumed true for the purpose of deciding the motions currently before the Court. They are not to be considered factual findings for any purpose other than consideration of the pending motions. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint."); see also Clatterbuck v. City of Charlottesville, 841 F. Supp. 2d 943, 948 n.3 (W.D. Va. Jan. 18, 2012) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)) ("As with a motion to dismiss pursuant to 12(b)(6), in considering a motion to dismiss pursuant to Rule 12(b)(1) a court must accept as true all material factual allegations in the complaint and must construe the complaint in favor of the plaintiff.")

Virginia since 2008. Plaintiff Clear Sky owns the land, car wash equipment, and all other aspects of the car wash business located at 920 Great Bridge Boulevard ("Clear Sky Car Wash").

Defendant City is a duly incorporated municipality of the Commonwealth of Virginia. Defendant Carole Gillespie is the Right of Way Manager for Defendant City. Defendant Greenhorne is a Maryland corporation retained by Defendant City. Defendants Copeland, Evelyn Jones, and Daniel Jones are employees of Defendant Greenhorne. Defendant VDOT is a duly authorized agency of the Commonwealth of Virginia, operated by and through its Commissioner of Highways, presently Gregory Whirley, Sr. Defendant USDOT is a duly organized agency of the United States government, operated by and through Secretary Ray LaHood.

On or about November 26, 2008, Defendant City resolved to approve a project to widen United States Route 17/Dominion Boulevard and to replace the Steel Bridge over the Southern Branch of the Elizabeth River ("Project"). The Project was a project of Defendant VDOT managed under contract by Defendant City, including Defendant City's Right of Way Manager, Defendant Gillespie. Defendant City retained Defendant Greenhorne, including Defendants Copeland, Evelyn Jones, and Daniel Jones, to perform right of way acquisition and related services for the Project. The Project received funding from Defendant City, the

3

Commonwealth of Virginia, and the federal government. Despite such funding, the Project has allegedly suffered funding shortfalls requiring Defendant City to seek various loans and to consider alternative sources of funding, such as the implementation of tolls.

On or about February 17, 2009, Defendant City received approval of the Project's major design features from Defendant VDOT's Chief Engineer. Such design features contemplated the fee simple use of all of Plaintiff Clear Sky's land at 920 Great Bridge Boulevard ("Land"). Defendant City began acquiring parcels of land for the Project in June 2010. Defendant City first contacted Plaintiffs concerning Plaintiff Clear Sky's Land in October 2010. Plaintiffs permitted Defendant City's appraiser, Brian Dundon ("Dundon"), to enter the Land and Plaintiffs provided additional information to Dundon. Dundon's appraisal ("Dundon Report") was signed on April 16, 2011. Such appraisal calculated the value of Plaintiff Clear Sky's Land using square footage valuation, as provided for in Defendant VDOT's Executive Summary Form, RW-45B ("Executive Summary Form"). The Dundon Report valued Plaintiff Clear Sky's Land at $13 per square foot, for a total value of $416,728 based on the Land's 32,056 square footage. According to the Complaint, on the same day that Dundon submitted his report, Defendant City advised Plaintiffs, without explanation, that it required a

second appraisal. Appraisers Bradley R. Sanford and David L. Stankus submitted the second appraisal ("Sanford Report") on or about June 13, 2011. The Sanford Report also calculated the value of Plaintiff Clear Sky's Land by square footage, but valued such Land at $17 per square foot, for a total value of $544,952. Neither appraisal considered whether an alternative method of valuing Plaintiff Clear Sky's property—pad site valuation—was more appropriate than the square foot valuation provided for by Defendant VDOT's Executive Summary form.

On or about August 9, 2011, Defendant Gillespie signed the Dundon Report and approved Plaintiff Clear Sky's Land for acquisition. Defendant Greenhorne communicated such information to Plaintiffs by letter the next day. Such letter stated that the Sanford Report had been rejected by an independent review appraiser and that the same appraiser had approved the Dundon Report for use in determining the market value of Plaintiff Clear Sky's Land and just compensation for the Land.

On or about August 30, 2011, Plaintiffs notified Defendants[2] of their concerns regarding Defendant Greenhorne's letter, and asked ten questions regarding such letter and the Dundon report.

---

[2] It is unclear to whom such letter was sent, as Plaintiffs refer in this section of the Complaint to "Defendants" generally with little to no additional specification. However, this section does contain some references to Defendants City, Greenhorne, Daniel Jones, and Gillespie, and to Dundon. These references, as well as the context of the Complaint's discussion, lead to the conclusion that "Defendants" refers generally to Defendant City and its agents and employees.

Such questions included: (1) whether Defendants would assess and value an actual replacement site and existing equipment for actual replacement; (2) why the review appraiser had decided that the Sanford Report would not be used at all and was a less appropriate representation of just compensation than the Dundon Report; (3) why the Dundon Report and Defendant City used square footage valuation instead of pad site evaluation; and (4) why the Dundon Report depreciation was "based on an IRA cost recovery schedule … accelerated over [seven] years for business tax deduction purposes" instead of on the economic life for Clear Sky Car Wash. (Compl. ¶ 112). On August 31, 2011, Defendant City, through Defendants Greenhorn and Daniel Jones, discussed Plaintiffs' letter with Plaintiffs and agreed to respond to Plaintiffs' questions. Plaintiffs agreed to wait for such answers. After twice reiterating its intent to respond to Plaintiffs' questions, Defendant City emailed its response to Plaintiffs on or about October 19, 2011.

Plaintiffs expressed their dissatisfaction with such response on October 24, 2011. Defendant City advised Plaintiffs on November 14, 2011 that it would address such concerns after an internal meeting. Defendant City provided a lengthy response on November 17, 2011.[3] In such response, Defendant City noted

---

[3] On the same date, Plaintiffs wrote to Defendant City's Mayor Krasnoff asking him to intercede and to direct Defendant City to comply with

its obligation to follow state and federal laws and regulations in its efforts to obtain Plaintiff Clear Sky's Land. In so noting, Defendant City stated that, if Plaintiffs wanted relocation benefits, they were required to apply for calculation and payment of such relocation benefits and noted that no such application had been made. Plaintiffs and Defendant City continued corresponding throughout November and December 2011 and into January 2012 regarding Plaintiffs' concerns with Defendant City's appraisal of Plaintiff Clear Sky's Land. During such correspondence, Defendant Tim Copeland advised Plaintiffs that he had conducted the appraisal reviews and that he also had oversight responsibility for Defendant Greenhorne's involvement in Project negotiations and acquisitions. On January 27, 2012,[4] Defendant City advised Plaintiffs that it calculated just compensation at $2.15 million "based on unchanged, original calculations and analysis from the Dundon Report."[5] Following the January 27, 2012 letter, Plaintiffs

---

its legal obligations relating to Plaintiffs' relocation and to provide answers to Plaintiffs' questions. Plaintiffs reminded Mayor Krasnoff that Plaintiffs had refrained from hiring lawyers while awaiting Defendant City's responses to their questions.

[4] The Court notes that the dates provided in this section of the Complaint are inconsistent with respect to the year in which the alleged events occurred. The context of the Complaint leads to the conclusion that all events described in Paragraphs 138 through 154 of the Complaint occurred in 2012. Therefore, the Court has adjusted the dates accordingly.

[5] It is unclear what the $2.15 million just compensation figure includes in light of the prior allegation that the Dundon Report

7

retained counsel who began communicating with Defendant City on behalf of Plaintiffs. Plaintiffs' counsel was advised by Defendant City's Deputy City Attorney that Plaintiffs could appeal Defendant City's "calculation of benefits" and was additionally directed not to communicate directly with Defendant City's employees and agents. On March 13, 2012, Defendant City further advised Plaintiffs' counsel in writing that it would not discuss settlement or take further action until having received an appraisal from Plaintiffs.

On March 22, 2012, Defendant City filed a Certificate of Take in the Circuit Court for the City of Chesapeake to gain a defeasible fee interest in the Land owned by Plaintiff Clear Sky. On March 30, 2012, Defendant City issued a written demand directly to Plaintiffs, and not to Plaintiffs' counsel, requiring them to vacate and turn over possession of such Land no later than May 1, 2012.[6]

---

calculated the value of Plaintiff Clear Sky's Land at $416,728. Additionally, the Court notes the pleaded facts that Defendants Greenhorne and Daniel Jones had previously advised Plaintiffs on November 3, 2011 that the land valuation from the Sanford Report should replace the land valuation from the Dundon Report; that Defendant City had previously agreed in a meeting on December 20, 2011 that the Dundon Report's depreciation calculation was in error and should be changed in light of the condition of Clear Sky Car Wash; and that Defendant City had further advised that comparable properties outside of the area should be used, in light of certain problems with the comparable properties identified in the Dundon Report.

[6] Additionally, on April 10, 2012, Plaintiffs' site employee discovered an employee or agent of Defendant City on Plaintiff Clear Sky's property inspecting buildings and equipment without authorization. When asked what he was doing, the employee said that he was inspecting

## II. PROCEDURAL HISTORY

On April 11, 2012, Plaintiffs removed the Certificate of Take to this Court[7] and simultaneously filed the separate instant action against Defendants, alleging that Defendants failed to comply with the federal Uniform Relocation Assistance and Real Property Acquisitions Policies for Federal and Federally Assisted Programs Act ("URA") and, in doing so, violated Plaintiffs' statutory and constitutional rights. Plaintiffs allege six Counts: (1) Violations of the URA; (2) Due Process Violations under the Fifth and Fourteenth Amendments to the United States Constitution; (3) Equal Protection Violations under the Fourteenth Amendment to the United States Constitution; (4) Civil Rights Violations under 42 U.S.C. §§ 1983, 1985 (conspiracy), and 1988 (attorneys' fees); (5) Breach of Contract; and (6) Equitable Estoppel. Plaintiffs seek declaratory and injunctive relief against all Defendants, as

---

to determine whether rats were present in the building that would exit when the building on Plaintiff Clear Sky's Land was razed.

[7] By Opinion and Order entered on September 5, 2012, this Court remanded the Certificate of Take back to the Circuit Court for the City of Chesapeake on the ground that this Court lacked subject matter jurisdiction over a condemnation proceeding instituted in state court and removed to federal court without a necessary federal question or individual right of action. City of Chesapeake, Va. v. Clear Sky Car Wash, LLC, No. 2:12cv195, 2012 WL 3866508 (E.D. Va. Sept. 5, 2012). In so holding, the Court specifically addressed arguments raised in the briefs for the motions to dismiss currently before the Court in this case. As such, the Court will refer to its prior Opinion and Order ("Remand Order") and the findings contained therein throughout this Opinion and Order.

well as damages of not less than $9 million, pre- and post-judgment interest, and attorneys' fees as to all Defendants except Defendant VDOT.

All named Defendants have filed motions to dismiss Plaintiffs' Complaint. Defendants Greenhorne, Copeland, Evelyn Jones, and Daniel Jones filed their motion to dismiss on May 14, 2012. (Docket No. 7). Defendant City filed its motion to dismiss on May 18, 2012. (Docket No. 12). Defendant Gillespie filed her motion to dismiss on June 14, 2012. (Docket No. 24). Defendants USDOT and VDOT filed their respective motions to dismiss on June 25, 2012. (Docket Nos. 29, 31). All such motions have been fully briefed and are now ripe for this Court's review. Because all of the pending motions seek dismissal under Federal Rule of Civil Procedure 12(b)(6) and the majority seek dismissal under Federal Rule of Civil Procedure 12(b)(1), the Court has considered all such motions and their related briefs in reaching its decision to dismiss each count and claim in this matter.

### III. LEGAL STANDARD

#### A. Subject Matter Jurisdiction

Defendants City, Gillespie, USDOT, and VDOT seek to dismiss all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1), which permits a defendant to move for dismissal of a claim due to the court's lack of subject matter

jurisdiction. <u>A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.</u>, 548 F. Supp. 2d 219, 221 (E.D. Va. 2008); <u>see</u> (Docket Nos. 12, 24, 29, 31). Having filed the instant action, thereby seeking to invoke the jurisdiction of the Court, Plaintiffs bear the burden of proving that this Court has subject matter jurisdiction. <u>Richmond, Fredericksburg & Potomac R.R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991).

### B.    Failure to State a Claim

In addition to establishing subject matter jurisdiction over each claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to meet this requirement, the complaint is subject to dismissal for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants have moved for dismissal of all claims under Rule 12(b)(6). (Docket Nos. 7, 12, 24, 29, 31). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

While a 12(b)(6) motion tests the sufficiency of a complaint, it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." Twombly, 550 U.S. at 556 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). While the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

Pursuant to Rule 12(d), if matters outside the pleadings are submitted in conjunction with, or in opposition to, a 12(b)(6) motion, the court must either exclude such materials

from consideration or convert the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d). If the motion is converted, the court must afford the parties a reasonable opportunity to present additional pertinent materials. Id.

## IV. DISCUSSION

### A. Subject Matter Jurisdiction Generally

Federal district courts are courts of limited subject matter jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009) (citing Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005)). They have authority to exercise "only the jurisdiction authorized them by the United States Constitution and by federal statute." Id. (citing Bowles v. Russell, 551 U.S. 205 (2007)). Plaintiffs set forth a number of grounds in the Complaint upon which they assert this Court's subject matter jurisdiction over their claims and causes of action: (1) Original federal question jurisdiction pursuant to 28 U.S.C. § 1331; (2) Original jurisdiction over civil rights actions pursuant to 28 U.S.C. § 1343; (3) Original jurisdiction over claims against the United States not exceeding $10,000 pursuant to 28 U.S.C. § 1346(a)(2); (4) Original jurisdiction over condemnation actions by the United States pursuant to 28 U.S.C. § 1358; (5) Federal judicial review of certain administrative matters pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*;

13

(6) Original jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; and (7) Supplemental jurisdiction over related claims pursuant to 28 U.S.C. § 1367(a). Before considering its jurisdiction as to each alleged cause of action, the Court will address those alleged grounds that it finds do not provide jurisdiction as to any claim or cause of action.

### i. Abandoned Grounds for Original Subject Matter Jurisdiction – 28 U.S.C. §§ 1346(a)(2), 2201-02

The Court notes that issues raised in the Complaint but not briefed or argued are considered abandoned. See Parnell v. Supreme Court of Appeals of W. Va., 110 F.3d 1077, 1082 n.5 (4th Cir. 1997) (declining to consider a claim on the ground that "it was abandoned when the merits of the case were litigated in district court"). Because Plaintiff fails to address jurisdiction pursuant to 28 U.S.C. §§ 1346(a)(2) and 2201-02 in any of its responsive briefs to the motions to dismiss, the Court deems such grounds abandoned.[8] Having filed the instant

---

[8] The Court further notes that the Court would lack original subject matter jurisdiction as a matter of law under both 28 U.S.C. §§ 1346(a)(2) and 2201-2202 had Plaintiffs not abandoned such grounds. Although § 1346(a)(2) grants district courts original jurisdiction over civil actions or claims brought against the United States, such actions may "not exceed[] $10,000 in amount." 28 U.S.C. § 1346(a)(2). Plaintiffs seek "damages in a sum not less than $9 million" as to all Defendants except Defendant VDOT. Thus, Plaintiffs claims against the United States exceed $10,000, depriving the Court of original subject matter jurisdiction pursuant to 28 U.S.C. § 1346(a)(2). The Court also may not exercise original jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act is a procedural statute that, alone, does not confer jurisdiction upon a

14

action and thereby seeking to invoke this Court's jurisdiction, Plaintiffs had the burden of establishing such jurisdiction. Richmond, Fredericksburg & Potomac R.R., 945 F. 2d at 768. By abandoning the above grounds for jurisdiction, Plaintiffs have failed to meet their burden as to those grounds and jurisdiction will not lie under 28 U.S.C. §§ 1346(a)(2) and 2201-02.

## ii. Jurisdiction over Condemnation Proceedings Pursuant to 28 U.S.C. § 1358

Plaintiffs have pled this Court's jurisdiction under 28 U.S.C. § 1358. Section 1358 gives district courts "original jurisdiction of all proceedings to condemn real estate for the use of the United States or its departments or agencies." 28 U.S.C. § 1358. The instant action, however, is not a proceeding to condemn real estate. Rather, it is a suit for declaratory, injunctive, and monetary relief related to certain "rights" allegedly available to Plaintiffs prior to the deprivation of

---

district court. Gibraltar, P.R., Inc. v. Otoki Grp., Inc., 104 F.3d 616, 619 (4th Cir. 1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 16-17 n.14 (1983)) ("[T]he DJA does not provide a source of jurisdiction which is independent of substantive federal law."). Rather, the Act "provides an additional remedy in cases with an independent basis of jurisdiction." Energy Recovery, Inc. v. Hauge, 133 F. Supp. 814, 818 (E.D. Va. 2000) (quoting Microstrategy, Inc. v. Convisser, et. al, No. CIV.A00-453-A, 2000 WL 554264, at *2 (E.D. Va. May 2, 2000)); see also 28 U.S.C. § 2201(a). Thus, the Court must have before it a properly pled claim over which it has an independent basis for exercising original jurisdiction before it may act pursuant to the Declaratory Judgment Act. Because the Court finds below that no such claim has been pled, it would lack jurisdiction to provide declaratory relief under the Declaratory Judgment Act, had Plaintiffs not abandoned such ground.

their property interests in Clear Sky Car Wash. Additionally, even if the Court read § 1358 broadly enough to bring such claims within the meaning of a "proceeding to condemn real estate," which it does not, the Court would still lack jurisdiction under § 1358 because "[t]his provision of the Judiciary Act was intended as a grant of jurisdiction to the district courts of actions brought by the United States and not of actions that might have an eminent domain nexus brought against the government." Ledford v. Corps. Of Eng'rs of U.S., 500 F.2d 26, 28 (6th Cir. 1974) (citing Turtzo v. United States, 347 F. Supp. 336 (E.D. Pa. 1972)) (emphasis added). For these reasons, the Court finds that it lacks original subject matter jurisdiction over all of Plaintiffs' claims and causes of action pursuant to 28 U.S.C. § 1358.

Thus, the only remaining alleged bases upon which this Court may exercise jurisdiction over Plaintiffs' claims or causes of action are: (1) Federal question jurisdiction pursuant to 28 U.S.C. § 1331; (2) Original jurisdiction over certain civil rights actions pursuant to 28 U.S.C. § 1343; (3) Federal judicial review of certain administrative matters pursuant to the APA, 5 U.S.C. § 701 *et seq*; and (4) Supplemental jurisdiction over related claims pursuant to 28 U.S.C. § 1367(a). The Court will briefly review the legal standards for exercising jurisdiction under these grounds before

16

considering its jurisdiction and the sufficiency of Plaintiffs' claims as to each alleged cause of action.

### iii.    Federal Question Jurisdiction Pursuant to 28 U.S.C. § 1331

District courts have original jurisdiction pursuant to 28 U.S.C. § 1331 "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. According to the United States Court of Appeals for the Fourth Circuit, "[t]here is no 'single, precise definition' of what it means for an action to 'arise under' federal law." Verizon Md., Inc. v. Global Naps, Inc., 377 F.3d 355, 362 (4th Cir. 2004) (quoting Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986)). However,

> [t]he Supreme Court has recognized § 1331 jurisdiction in a variety of cases, such as (1) when a federal right or immunity forms an essential element of the plaintiff's claim; (2) when a plaintiff's right to relief depends upon the construction or application of federal law, and the federal nature of the claim rests upon a reasonable foundation; (3) when federal law creates the cause of action; and (4) when the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

Id. (internal citations and quotations omitted).

### iv.    Original Jurisdiction over Civil Rights Actions Pursuant to

### 28 U.S.C. § 1343

District Courts have original jurisdiction over civil actions "authorized by law to be commenced by any person" to recover damages for injury caused "by any act done in

17

furtherance of any conspiracy mentioned in [42 U.S.C. § 1985]"
and from any person who had knowledge that such an act was about
to occur and the power to prevent such act but who failed to do
so or otherwise aided in the act's commission. 42 U.S.C.
§ 1343(a)(1)-(2). The district court's original jurisdiction
pursuant to § 1343 also extends to actions to redress
deprivations of "any right, privilege or immunity secured by the
Constitution of the United States or by any Act of Congress
providing for equal rights…" and to actions for damages or
equitable relief "under any Act of Congress providing for the
protection of civil rights." Id. § 1343(b)(3)-(4).

Section 1343 is "the jurisdictional counterpart of certain
post-Civil War civil rights statutes." Nouse v. Nouse, 450 F.
Supp. 97, 99 (D. Md. 1978). It provides jurisdiction over
§ 1985 conspiracy claims and over § 1983 civil rights claims.
28 U.S.C. § 1343(a)(1)-(2); see also Crosby v. City of Gastonia,
635 F.3d 634, 639 n.5 (4th Cir. 2011). But "[i]n order for
jurisdiction to exist under section 1343, a complaint must at a
minimum seek recovery under one of the substantive statutes."
Nouse, 450 F. Supp. at 99; see also Campbell v. Gadsden Cnty.
Dist. Sch. Bd., 534 F.3d 650, 653 n.3 (5th Cir. 1976)
("[S]ection 1343 jurisdiction is unavailable in the absence of
an appropriate cause of action. In this sense, failure to state
a claim under sections 1981, 1983, and 1985 or other appropriate

18

legal authority has the effect of depriving federal courts of subject matter jurisdiction under section 1343.").

v. **Federal Judicial Review Pursuant to 5 U.S.C. § 701 et seq.**

The APA provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action … is entitled to judicial review thereof." 5 U.S.C. § 702. Only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Actions not made directly reviewable by statute or actions that are "preliminary, procedural, or intermediate" in nature are subject to review when the final agency action is reviewed. Id. A court engaging in judicial review pursuant to the APA has the authority to: "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions" based on certain findings regarding such action, findings and conclusions. 5 U.S.C. § 706.

vi. **Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367(a)**

If a district court has original jurisdiction over a claim in any civil action, it may exercise jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(a). The court's jurisdiction under § 1367(a) extends only to those claims "that are so related to claims in the action within [the court's]

19

original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution." 28 U.S.C. § 1367(a). If no valid federal claim is asserted, then exercising supplemental jurisdiction, though permissible, would be improper, for "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v.Gibbs, 383 U.S. 715, 726 (1966). Therefore, if the Court lacks original subject matter jurisdiction over the claims and causes of action alleged in Plaintiffs' Complaint, it will decline to exercise subject matter jurisdiction over any related state-law claims.

Having reviewed the legal standards for the remaining alleged bases for jurisdiction, the Court will consider each cause of action in turn, addressing both its jurisdiction and the sufficiency of each count for ease of reference.

### B. Count I

Plaintiffs' primary contention, stated in Count I and incorporated in Counts II through VI, is that the URA, a federal statute, affords them certain pre-deprivation rights that are enforceable in this Court as a federal right of action or, alternatively, are reviewable in this Court pursuant to the APA. Defendants argue that alleged violations of the URA do not give rise to federally enforceable or reviewable rights in this case

and, because the remaining causes of action set forth in Plaintiffs' Complaint are premised solely upon claims founded on the URA, the Court lacks original subject matter jurisdiction over all such causes of action.

### i. Federal Question Jurisdiction over a Federal Right of Action

The URA was created "in order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many federal programs, and to promote public confidence in federal land acquisition practices…" 42 U.S.C. § 4651. The Act's primary purpose is to ensure that "persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance … [do] not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole." 42 U.S.C. § 4621(b). The URA ultimately seeks "to minimize the hardship of displacement on such persons." Id. The Act consists of two principal subchapters: Subchapter II, which sets forth policies for providing relocation assistance to displaced persons; and Subchapter III, which creates guidelines for federal agencies to apply in land acquisition proceedings. The Court addresses the question of its jurisdiction under both Subchapters, reaching

first its jurisdiction under Subchapter III in light of its prior Remand Order.

### a. Subchapter III - Land Acquisition Policies

In remanding Defendant City's Certificate of Take back to the Circuit Court for the City of Chesapeake, this Court ruled that it lacked subject matter jurisdiction under the land acquisition policies—Subchapter III—of the URA. <u>Clear Sky Car Wash</u>, No. 2:12cv195, 2012 WL 3866508 (E.D. Va. Sept. 5, 2012). The Court adopts its prior holding and incorporates the reasons stated in its Remand Order in again finding that it lacks subject matter jurisdiction under the land acquisition policies of the URA. <u>See</u> <u>id.</u>

To summarize, Subchapter III sets forth nine provisions by which federal agencies should be guided during land acquisitions, all laid out in § 4651 and incorporated against the states in § 4655. 42 U.S.C. §§ 4651, 4655. As Plaintiff Clear Sky did in the prior action, Plaintiffs again argue that Defendants violated a number of these land acquisitions guidelines, most specifically the "independent appraisal" guideline of 42 U.S.C. § 4651(2). The URA specifies that "the provisions of section 4651 … create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." 42 U.S.C. § 4602(a). Therefore, the Act itself appears to state that § 4651 does not create federal

rights in, or a federal right of action for, landowners. Additionally, neither the case law nor the URA's legislative history[9] support Plaintiffs' argument that the URA's land acquisition policies provide landowners such rights. Clear Sky Car Wash, 2012 WL 3866508, at *3-5 (reviewing the relevant case law and legislative history). Nor do the URA's land acquisition policies provide for a federal right of action when the statute is read in light of Gonzaga University v. Doe, 536 U.S. 273 (2002). Id. at *5-6 (applying the guidance from Gonzaga to Subchapter III of the URA). Because the URA does not provide for a federal right of action under the land acquisition policies of § 4651, either by federal agencies or as incorporated against the states via § 4655, the Court again finds that it does not have original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over actions alleged under such

_____

[9] As this Court previously noted, district courts in this Circuit are required to first examine the plain language of the statute before considering legislative history. Ignacio v. U.S., 674 F.3d 252, 255-56 (4th Cir. 2012); U.S. v. Hatcher, 560 F.3d 222, 226 (4th Cir. 2009). The Hatcher court observed that, "[a]s a general rule, 'when the terms of a statute are clear, its language is conclusive and courts are "not free to replace . . . [that clear language] with an unenacted legislative intent."'" Id. (quoting United States v. Morison, 844 F.2d 1057, 1064 (4th Cir. 1988)(quoting INS v. Cardoza-Fonseca, 408 U.S. 421, 453 (1987))). This Court previously considered this issue and found that, based on the clear statement in § 4602(a), the plain language of the URA does not appear ambiguous on the issue of whether a federal right of action is created on the part of landowners. Clear Sky Car Wash, 2012 WL 3866508, at *4-5. Despite its finding, this Court reviewed the relevant legislative history for purposes of completeness and because Clear Sky had argued legislative history in its brief. Id. at *4.

policies. This leaves only the question of the Court's federal question jurisdiction under Subchapter II of the URA, the guidelines for determining relocation assistance for displaced persons.

### b. Subchapter II - Relocation Payments and Assistance Policies

The URA does not expressly create a private, federal right of action. See Delancey v. City of Austin, 570 F.3d 590, 593 n.4 (5th Cir. 2009). Rather, Subchapter II directs the head of any displacing agency to provide certain monetary and advisory relocation assistance benefits to displaced individuals and businesses.[10] 42 U.S.C. §§ 4622, 4625. Section 4622 entitles businesses to recover "actual moving expenses, loss of tangible property[,] and actual expenses in searching for [and reestablishing] a replacement business." Am. Dry Cleaners & Laundry, Inc. v. U.S. Dep't of Transportation, 722 F.2d 70, 72 (4th Cir. 1983); see also 42 U.S.C. § 4622(a). However, the right to prompt payment of such expenses exists only after a proper application for authorized payments has been made. 42 U.S.C. § 4633(b)(2). Section 4625 outlines the advisory relocation assistance services to which a displaced person is entitled, including assistance "in obtaining and becoming

---

[10] The Court observes and clarifies for the benefit of the parties that the express limitation contained in § 4602(a) applies only to the land acquisition policies of Subchapter III and is therefore not applicable to the Court's analysis of Subchapter II's policies concerning monetary and advisory relocation assistance.

established in a suitable replacement location." 42 U.S.C. § 4625(c)(4); see also Am. Dry Cleaners, 722 F.2d at 73. Section 4625 benefits are not subject to the application requirement of § 4633(b)(2). Although the language of Subchapter II appears to confer certain entitlements to displaced persons and businesses, it does not address whether the URA gives Plaintiffs a federal right of action to pursue the statutorily authorized benefits.

The Supreme Court has made clear that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chi., 441 U.S. 677, 688 (1979). Federal rights of action, like substantive federal law, "must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001) (citing Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979)). Whether a statute expressly or implicitly creates such a right of action "is basically a matter of statutory construction." Transam. Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 15 (1979). Thus, it is a function of the court "to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id. (citing Lewis, 444 U.S. at 15).

The URA does not expressly create a federal right of action under any of its provisions. For the reasons stated in its

Remand Order, the Court has found that the land acquisition policies stated in Subchapter III of the URA do not give rise to any rights or liabilities, in accordance with the plain language of 42 U.S.C. § 4602(a). As previously noted, however, Section 4602(a)'s declaration that the URA "create[s] no rights or liabilities" applies only to Subchapter III and does not similarly limit the relocation assistance policies of Subchapter II. Therefore, nothing in the plain language of the Act addresses whether a federal right of action is available under Subchapter II.

The United States Court of Appeals for the Fourth Circuit has not directly ruled on the issue of whether a federal right of action exists under the URA. But the Fourth Circuit has noted, in the context of reviewing the criminal prosecution of a holdover tenant, that "[t]he [URA] and implementing regulations evince an intent to adjudicate controversies over relocation assistance to tenants administratively or by other appropriate civil proceedings." United States v. Esposito, 754 F.2d 521, 524 (4th Cir. 1985). Although it has not elaborated on the type of civil proceedings that could appropriately be employed to adjudicate such controversies, the Fourth Circuit has reviewed an action seeking preliminary injunctive relief from eviction for alleged violations of Subchapter II of the URA without questioning federal jurisdiction over such a cause of action.

Am. Dry Cleaners, 722 F.2d at 72 (reversing the District Court's grant of a preliminary injunction on the ground that the defendant had complied with its obligation to provide advisory relocation assistance). And, while the Fourth Circuit has not explicitly considered the availability of a federal right of action under Subchapter II, the Third Circuit has held that a federal right of action against state officials exists when such officials fail to provide relocation assistance in accordance with the URA. Pietroniro v. Borough of Oceanport, N.J., 764 F.2d 976, (3d Cir. 1985) (finding such a private cause of action for violations of 42 U.S.C. § 4625 "[i]n the absence of a comprehensive enforcement scheme" for redressing violations of the URA).

More recently, however, circuit courts (including the Third Circuit) have questioned whether such a federal right of action exists under Subchapter II of the URA in light of the Supreme Court's 2002 decision in Gonzaga, 536 U.S. 273. See, e.g., Munoz v. City of Philadelphia, 346 Fed. App'x 766, 769 n.6 (3d Cir. 2009) (unpublished) ("We highly doubt whether, in light of Gonzaga v. Doe, 563 U.S. 273 (2002), 42 U.S.C. § 4625(a) does create a private right enforceable under § 1983."); Delancey, 570 F.3d at 595 (holding that "the URA provision here[, § 4625,] does not evidence Congressional intent to create a private right of action for money damages" in light of Gonzaga's guidance);

27

Faylor v. Szupper, 411 Fed. App'x 525, 531 n.7 (3d Cir. 2011)
(per curiam) (noting that "it is unclear whether the URA
provides a private right of action for money damages" in light
of the conflicting holdings in Delancey, 570 F.3d at 594, and
Pietroniro, 764 F.2d at 980).  In Gonzaga, the Supreme Court
considered whether a federal right of action existed under 42
U.S.C. § 1983 for violations of the Family Educational Rights
and Privacy Act ("FERPA").    Gonzaga, 536 U.S. at 276.    In
considering  the  issue,  the  Gonzaga  Court  described  the
circumstances  under  which  a  federal  statute  gives  rise  to  a
private right of action.[11]   The Court reemphasized its prior
holding that "unless Congress 'speaks[s] with a clear voice,'
and  manifests  an  'unambiguous'  intent  to  confer  individual
rights," there is no basis for private enforcement…."   Id. at
280 (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S.
1, 17 (1981)).   To determine whether Congress had exhibited such
an unambiguous intent to create a private right of action under
FERPA, the Gonzaga Court considered three primary factors:

---

[11] Although the Gonzaga Court addressed whether a statute created
rights enforceable under 42 U.S.C. § 1983, the Court observed that
"[a] court's role in discerning whether personal rights exist in the
§ 1983 context should … not differ from its role in discerning whether
personal rights exist in the implied right of action context.   Both
inquiries simply require a determination as to whether or not Congress
intended to confer individual rights upon a class of beneficiaries.
Accordingly, where the text and structure of a statute provide no
indication that Congress intends to create new individual rights,
there is no basis for a private suit…." Gonzaga, 536 U.S. at 285
(internal citations omitted).

(1) whether the Act included specific, rights-creating language; (2) whether the language had an individual or aggregate focus; and (3) the audience to whom the language was directed and the strength of such language. Id. at 290.

Only one federal Circuit Court has considered the URA's provisions in light of Gonzaga. Delancey, 570 F.3d 590. In Delancey, the Fifth Circuit considered § 4625 of Subchapter II of the URA, which provides for advisory relocation assistance to qualifying displaced persons and businesses. Id. at 594-95. After reviewing the Gonzaga Court's guidance, the Fifth Circuit held that there was no Congressional intent to create a federal right of action under the URA. Id. at 595. In so holding, the Fifth Circuit rejected pre-Gonzaga cases offered to demonstrate the existence of such a right of action on the ground that such cases "predate[d] and conflict[ed] with Gonzaga" and were therefore "unpersuasive." Id. at 595 n.7.

This Court previously found the Fifth Circuit's reasoning in Delancey persuasive when it considered whether a federal right of action existed under the land acquisition policies in Subchapter III of the URA. Clear Sky Car Wash, 2012 WL 3866508, at *5-6. The Court again finds the Fifth Circuit's reasoning persuasive in considering the question of whether such a right of action exists under the relocation assistance policies in Subchapter II. Specifically, the Court finds that the

provisions of §§ 4622 and 4625, which provide for monetary and advisory relocation assistance, are "directed at the 'head of any displacing agency' rather than at the individuals benefited by the statute." Delancey, 570 F.3d at 594. Further, such provisions do not contain any "rights-creating language." Id.; see also Gonzaga, 536 U.S. at 290. "Instead, [they] prescribe[] a policy and practice for administering relocation assistance." Delancey, 570 F.3d at 595 (citing 42 U.S.C. § 4625(b)); see also 42 U.S.C. § 4622. The Gonzaga Court expressly held that such "policy and practice" language is insufficient to create an individual right of action. Gonzaga, 536 U.S. at 288-89; see also Delancey, 570 F.3d at 595. Therefore, this Court finds that Congress did not evidence an intent to create a federal right of action under Subchapter II of the URA and, absent such intent, the URA does not create such a right of action.

As the Fifth Circuit did in Delancey, this Court finds that cases predating and in conflict with Gonzaga, including the Fourth Circuit's decision in American Dry Cleaners, 722 F.2d 70, and the Third Circuit's decision in Pietroniro, 764 F.2d 976, are unpersuasive and uninstructive on the issue of whether a federal right of action exists under Subchapter II of the URA.[12]

---

[12] American Dry Cleaners vacated the district court's grant of a preliminary injunction on the ground that the defendant in that case had not failed to comply with Subchapter II's requirements. 722 F.2d at 73. In so holding, the Fourth Circuit did not address the question of whether a federal right of action exists under the URA. Although

Instead, the Court holds, in accordance with <u>Gonzaga</u> and <u>Delancey</u>, that the URA does not provide for a federal right of action under the relocation assistance policies of Subchapter II. Although Subchapter II does set forth certain relocation assistance benefits, it does not create a private remedy. <u>See</u> <u>Alexander</u>, 532 U.S. at 286.

This reading of Subchapter II is consistent with the URA's legislative history. The Court considers such history in finding no federal right of action under Subchapter II because the plain language of the statute is ambiguous on the issue. <u>Reid v. Angelone</u>, 369 F.3d 363, 368 (4th Cir. 2004) ("[T]o the extent that there is any ambiguity in [the statute's relevant] terms, we must consider other indicia of congressional intent, such as the legislative history."); <u>Hatcher</u>, 560 F.3d at 226 ("Only if … the terms of a statutory provision are ambiguous [is a court] then permitted to consider other evidence to interpret the meaning of the provision, including the legislative history."). As Plaintiff Clear Sky argued when opposing remand,

it may have assumed, for purposes of its decision, that such an action existed, it ultimately vacated the order of the district court. <u>Id.</u> at 74. The Third Circuit's decision in <u>Pietroniro</u> directly conflicts with <u>Gonzaga</u> in holding that "[i]n the absence of a comprehensive enforcement scheme within the regulatory scheme which encompasses the plaintiff's Complaint there exists a private cause of action against state officials for violations of … the URA." 764 F.2d at 980. <u>Gonzaga</u> requires far more than the mere absence of a comprehensive enforcement scheme before a private cause of action may be implied. 536 U.S. at 290. And the guidance provided in <u>Gonzaga</u>, as reviewed in <u>Delancey</u>, counsels against implying a cause of action for violations of the URA. <u>See</u> <u>Delancey</u>, 570 F.3d at 594-95.

Plaintiffs claim that the legislative history evidences Congressional intent to allow claims under the URA and judicial review of such claims. The Court reviewed the Act's legislative history in its Remand Order. In so doing, the Court considered the most noted opinion on the question, Barnhart v. Brinegar, 362 F. Supp. 464 (W.D. Mo. 1973),[13] and found such opinion to be well reasoned. The Court again finds Barnhart instructive and is again unpersuaded by Plaintiffs' legislative history argument. The district court in Barnhart conducted an exhaustive review of the URA's legislative history and reached two conclusions regarding Congress's intent concerning judicial review: (1) that no judicial review would be available under Subchapter III's land acquisition policies and no rights arise under such policies; and (2) that "judicial review of agency decisions regarding relocation payments and assistance, replacement housing, and title transfer and litigation expenses [under Subchapter II] was to be governed by the existing law, the Administrative Procedures Act." Id. 362 F. Supp. at 471-72. This Court agrees with Barnhart's conclusions and adopts them as

---

[13] As this Court noted in its Remand Order, the Fifth, Seventh, Eighth, and Eleventh Circuit Courts of Appeals have adopted the Barnhart analysis of the URA's legislative history. See, e.g., Ackerley Commc'ns of Fla., Inc. v. Henderson, 881 F.2d 990, 992 (11th Cir. 1989); United States v. 320.0 Acres of Land, More or Less in Monroe Cnty., State of Fla., 605 F.2d 762, 823 (5th Cir. 1979); Roth v. United States Dep't of Transp., 572 F.d 183, 184 (8th Cir. 1978); Rhodes v. City of Chi. for Use of Sch., 516 F.2d 1373, 1378 (7th Cir. 1975).

the appropriate statements of Congress's intent concerning jurisdiction under the URA.[14] Specifically, Subchapter II's relocation assistance policies are not enforceable in a federal right of action. To the extent Plaintiffs are entitled to judicial review of agency decisions regarding benefits under those policies, such review is governed exclusively by the APA. See, e.g., Ackerley, 881 F.2d at 993 ("We find that Congress intended that the Administrative Procedure Act would be the exclusive remedy for alleged violations of the URA.").

Because no federal right of action exists under either Subchapter of the URA, the Court lacks jurisdiction over Count I pursuant to 28 U.S.C. § 1331.[15]

### ii. Federal Review Jurisdiction Pursuant to the APA

Even where this Court lacks original federal question jurisdiction pursuant to 28 U.S.C. § 1331, it may still exercise jurisdiction to review certain administrative agency actions pursuant to the APA, 5 U.S.C. § 701 *et seq.* The APA provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action … is entitled to judicial review thereof." 5 U.S.C § 702. Such

---

[14] The Court does not here restate its conclusions regarding the URA's land acquisition policies, but instead refers again to its Remand Order. See Clear Sky Car Wash, 2012 WL 3866508, at *4.

[15] The Court additionally makes the alternative finding below that Plaintiffs have failed to state a claim upon which relief can be granted.

jurisdiction is limited, however; federal courts are authorized to review only "[(1)] agency action made reviewable by statute[,] and [(2)] final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. When conducting judicial review authorized by the APA, a district court has authority to "compel agency action unlawfully withheld or unreasonably delayed" and to "hold unlawful and set aside agency action, findings, and conclusions" upon certain findings regarding such actions, findings, and conclusions. 5 U.S.C. § 706.

As explained in the Court's Remand Order and reviewed above, the URA precludes judicial review for alleged violations of the land acquisition policies stated in Subchapter III. Clear Sky Car Wash, 2012 WL 3866508, at *4. Section 4602(a) expressly provides that § 4561 "create[s] no rights or liabilities." 42 U.S.C. § 4602. Because § 4602(a) deprives Plaintiffs of any rights against federal or state agencies in connection with the URA's land acquisition policies, actions taken by such agencies in accord with those policies are not reviewable under the APA. Barnhart, 362 F. Supp. at 472 (holding that if no rights exist under Subchapter III, "then one cannot be adversely affected or aggrieved by agency action," as required by § 702, which in turn "bars review of federal agency decisions under the [APA]"); see also Clear Sky Car Wash, 2012

34

WL 3866508, at *3-6. Thus, the Court finds that it lacks jurisdiction pursuant to the APA to review federal and state agency actions alleged under Subchapter III of the URA. This leaves only the question of its jurisdiction to review agency actions under the relocation assistance provisions of Subchapter II.

Unlike the land acquisition policies of Subchapter III, the relocation assistance policies set forth certain relocation assistance benefits for qualifying displaced persons and businesses. 42 U.S.C. §§ 4622, 4625; see also 42 U.S.C. § 4602(a) (clarifying that § 4651, the land acquisition policies of the URA, "create[s] no rights or liabilities" without similarly limiting §§ 4622 and 4625). However, as stated above, those rights are not enforceable via a federal right of action. Rather, they are enforceable exclusively under the APA. E.g., Ackerley, 881 F.2d at 993 (holding that the APA is the exclusive remedy for violations of the URA); Wallace v. Chi. Hous. Auth., 298 F. Supp. 2d 710, 723 (N.D. Ill. 2003) (addressing an alleged failure to provide relocation assistance and holding that "the Administrative Procedures Act … is the exclusive remedy for URA claims…."); Ledesma v. Urban Renewal Agency of City of Edinburg, Tex., 432 F. Supp. 564, 566 (D.C. Tex. 1977) ("While judicial review of property acquisition is precluded by statute, judicial review of agency decisions regarding relocation payments and

assistance … is governed by the Administrative Procedures Act."); Barnhart, 362 F. Supp. at 471 (reviewing legislative history and finding that Congress intended the APA to govern "judicial review of agency decisions regarding relocation payments and assistance…."). Therefore, the Court has jurisdiction to review agency actions taken pursuant to Subchapter II's policies to the extent that such action satisfies the requirements of § 704.

The APA authorizes judicial review only for agency actions made reviewable by statute and for final agency actions. 5 U.S.C. § 704. Action taken under Subchapter II of the URA is not made reviewable by statute. Accordingly, the Court finds that a final agency action is required before Plaintiffs' rights to relocation assistance under Subchapter II of the URA are subject to judicial review. To the extent that Plaintiffs have pled such a final agency action by which they have been aggrieved, the Court has jurisdiction to review such action under the APA.

An agency action is final if "the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." Darby v. Cisneros, 509 U.S. 137, 144 (1993) (quoting Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 479 U.S. 172, 193 (1985)). The finality requirement is conceptually distinct from the judicial

36

doctrine of exhaustion of administrative remedies, which "generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." Id. The purpose of the exhaustion requirement is to "provide[] an agency with an opportunity 'to correct its own mistakes with respect to programs it administers before it is haled into federal court.'" Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor, 118 F.3d 205, 209 (4th Cir. 1997) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Although the concepts of finality and exhaustion are distinct, the Supreme Court has held that "an action brought pursuant to the APA 'explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule.'" Id. (quoting Darby, 509 U.S. at 147).

As a threshold matter, the factual allegations set forth in the Complaint address only relocation payments under Subchapter II.[16] Plaintiffs allege no facts concerning any advisory

---

[16] Upon careful review of Plaintiffs' Complaint, the Court finds only four paragraphs containing factual allegations related to relocation assistance. (Compl. ¶¶ 128, 144-46). Specifically, Plaintiffs allege that in Defendant City's November 17, 2011 letter, "Defendants stated … that Plaintiffs still 'must apply' if they want calculation and payment of certain relocation benefits." (Compl. ¶ 128). And, that on February 21, 2012, Defendant City's attorney advised Plaintiffs that "Defendants had made a 'calculation of benefits and provided a copy of related city regulations with strict deadlines because Plaintiff 'would like to appeal,'" which calculation Plaintiffs allege was neither made nor provided to Plaintiffs. (Compl. ¶¶ 144-46).

relocation assistance under § 4625 and do not even allege that Defendants failed to provide them such advisory assistance.[17] Therefore, the Court considers only Plaintiffs' pleading obligations with respect to § 4622 and does not address § 4625 in considering its jurisdiction under the APA.

Section 4621 entitles displaced individuals to certain relocation payments upon "proper application for payment authorized for such person by [Subchapter II]." 42 U.S.C. § 4633. Plaintiffs do not allege that they applied for and were denied relocation assistance payments under the URA. Rather, Plaintiffs concede in their briefs that they never sought relocation payments under Subchapter II from Defendants. Because Plaintiffs failed to even seek such benefits, there is no agency action stating a "definitive position on the issue" of the relocation benefits available to Plaintiffs. See Darby, 509

Plaintiffs fail to specify which benefits are at issue in Paragraphs 144-46. Based on Plaintiffs allegations concerning their lengthy correspondence with Defendant City regarding the appraisal calculations, the Court believes that such benefits likely address the appraised value of Clear Sky Car Wash. The context of the Complaint and Plaintiffs' concession that they never applied for relocation assistance payments under § 4622 further compel this conclusion. Even if the Court assumed that the referenced benefits concern relocation assistance, which it does not, it is clear that the facts would be limited to relocation payments, based on the pleaded reference to their "calculation." Therefore, none of the pleaded facts address non-monetary assistance under § 4625.

[17] Plaintiffs do cite to § 4625 and policies set forth in its corresponding regulations when detailing their view of the URA's requirements. (Compl. ¶¶ 162-63; 185-86). But Plaintiffs plead no facts concerning such provisions and the Court is not bound by legal conclusions set forth in the Complaint. Eastern Shore Mkts., 213 F.3d at 180.

U.S. at 144. In the absence of <u>any</u> agency action under § 4622, this Court finds that there is no final agency action for it to review pursuant to its limited jurisdiction under the APA. <u>See</u> <u>United States v. 249.12 Acres of Land, More or Less, in Stephens</u> <u>& Cotton Counties, State of Okl.</u>, 414 F. Supp. 933, 935 (W.D. Okl. 1976) (finding no final action where "there is no indication that Defendants have presented their claim [for relocation assistance] to the proper administrative agency" and holding that absent such a final action, the matter could not "be maintained as a judicial review of an administrative action under the APA"). Because Plaintiffs have failed to seek any agency action as to relocation assistance payments under § 4622, this Court finds that it lacks jurisdiction under the APA, as there is no final agency action before it for review and the URA does not otherwise make agency action reviewable by statute. <u>See</u> 5 U.S.C. § 704.

Plaintiffs contend that the Court has jurisdiction under the APA despite their failure to apply for relocation assistance payments because such application would have been futile. This allegation is grounded in two arguments: (1) Plaintiffs claim that Defendants "barred" them from seeking relocation benefits by failing to provide them with an independent appraisal adequately describing the property appraised, as provided for in the regulations corresponding to the URA's land acquisition

policies; and (2) Plaintiffs also claim that Defendants "barred" them from seeking such relocation benefits by directing Plaintiffs to cease communicating with Defendant City's employees once Defendant City and Plaintiffs had each obtained counsel. Before the Court may exercise review jurisdiction pursuant to the APA, the party seeking such review must obtain a final agency action by exhausting all intra-agency appeals mandated by statute or agency rule. See Darby, 509 U.S. at 147. Section 4633 and its corresponding regulations provide administrative procedures by which Plaintiffs could have sought monetary relocation assistance and could have appealed any adverse agency decision regarding their right to such assistance. Plaintiffs' argument that "resort[] to administrative procedures would be futile" addresses not whether there is any agency action before the Court for review, but instead whether Plaintiffs may excuse their failure to exhaust the administrative remedies set forth in § 4633 and its corresponding regulations, as required, and thereby seek review of an otherwise unripe agency action. See, e.g., Fares v. United States I.N.S., 50 F.3d 6, *3 (4th Cir. 1995) (unpublished table decision) (listing futility as one basis upon which a party may be excused from an obligation to exhaust administrative remedies); see also Volvo GM, 118 F.3d at 209 (noting that actions brought pursuant to the APA require

40

exhaustion of all intra-agency appeals mandated by statute or agency rule). Because the Court finds no agency action in connection with the relocation assistance policies of Subchapter II, Plaintiffs' failure to exhaust remedies is largely irrelevant, as there is nothing for the Court to review, even if it excuses exhaustion as futile in this case. For purposes of completeness, however, the Court will briefly address the exhaustion doctrine as it relates to § 4622.

The plain language of the URA contemplates that displaced persons and businesses will apply for relocation assistance payments under the Act. 42 U.S.C. § 4633(b)(2). The corresponding regulations require that such applications be "supported by documentation as may be reasonably required to support [the] expenses incurred." 49 C.F.R. § 24.207. Furthermore, the URA prescribes the process by which an aggrieved applicant should seek review of their application—that is, from the head of the federal or state agency having authority over the displacing project. 42 U.S.C. § 4633(b)(3). In light of the administrative scheme set forth in § 4633 and the Supreme Court's guidance in Darby, 509 U.S. at 147, this Court finds that Plaintiffs were required to exhaust their administrative remedies before any agency action under Subchapter II could constitute a final agency action for purposes of judicial review. Thus, Plaintiffs were required to

exhaust the URA's administrative remedies, absent the application of some exception excusing such exhaustion. See Volvo GM, 118 F.3d at 209; Dalton v. City of Las Vegas, 282 Fed. App'x 652, 656 (10th Cir. 2008) ("Provided it is unrelated to land-acquisition policy … a plaintiff can bring an action under Title II of the URA … but only through a proceeding under the [APA]…. The APA requires exhaustion of administrative remedies before federal jurisdiction will lie." (internal citations omitted)); Am. Dry Cleaners, 722 F.2d at 71 n.1 (noting that exhaustion is required for determinations regarding a person's eligibility for and the amount of relocation assistance payments under the URA, but not for advisory relocation assistance under § 4625).

Exhaustion of administrative remedies is not required if: "(1) the dispute concerns statutory construction; (2) using administrative procedures would cause irreparable injury; (3) resorting to administrative procedures would be futile; (4) administrative remedies would be inadequate; or (5) the administrative decision would go unreviewed." Fares, 50 F.3d 6, at *3 (citing Darby v. Kemp, 957 F.2d 145, 147 (4th Cir. 1992); McDonald v. Centra, Inc., 946 F.2d 1059, 1063 (4th Cir. 1991)). The only excuse Plaintiffs proffer for their failure to exhaust the administrative remedies available to them under Subchapter II of the URA is futility. However, before a party is entitled

42

to rely on the futility exception, it is required to make at least one good faith application under administrative procedures, unless a final agency decision establishes that even one application would be futile. See Hamilton Bank, 473 U.S. at 188-89 (discussing decisions holding that failure to seek administrative relief can render claims unripe for judicial review); Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1454-55 (9th Cir. 1987) (noting that "[T]he Supreme Court has indicated that at least one application must be submitted [under administrative procedures] before the futility exception applies").

Plaintiffs have failed to allege that they made even one application for relocation assistance payments under § 4622. Rather, Plaintiffs concede that no such application was made and seek instead to excuse their failure by reason of futility. However, the Court finds that none of the facts alleged state a final agency action demonstrating that even one application for relocation payments would have been futile. Defendants' alleged failure to provide an adequate appraisal under Subchapter III, which gives Plaintiffs no rights, "does not conclusively determine" whether Defendants would have denied Plaintiffs relocation assistance payments. See Hamilton Bank, 473 U.S. at 194. On the contrary, the Complaint itself alleges that Defendant City invited Plaintiffs to apply for calculation and

payment of such relocation benefits. (Compl. ¶ 128). Likewise, Defendant City's request that Plaintiffs' counsel communicate with Defendant City's attorney instead of their employee, Defendant Greenhorne, does not suggest that Plaintiffs would have been denied relocation payments. Because the facts alleged are not dispositive on the question of whether Plaintiffs would have been denied all benefits under § 4622, they do not create "a final, reviewable decision" and Plaintiffs were required to make at least one application for such benefits before they could rely on the futility exception. Id. Their failure to do so forecloses their reliance on such exception.

Further, although Plaintiffs are not excused by reason of futility from failing to apply for relocation payments at all, even if they could invoke the futility exception (which the Court has just explained cannot be done), Plaintiffs have failed to plead facts plausibly showing such exception would excuse their failure to exhaust administrative remedies. Specifically, the Fourth Circuit requires a "clear and positive showing of futility … before suspending the exhaustion requirement." Makar v. Health Care Corp. of Mid-Atlantic (CareFirst), 872 F.2d 80, 83 (4th Cir. 1989) (reviewing futility in the ERISA context). The Court finds that Plaintiffs bare allegations that Defendants barred them from pursuing administrative remedies or otherwise exhausted Plaintiffs' administrative remedies by failing to

provide an appraisal to which Plaintiffs had no federal right, and by seeking to direct future communications to Defendant City's attorney do not rise to the level of a "clear and positive showing of futility." Id. Therefore, even if Plaintiffs were allowed to invoke the doctrine of futility to excuse their failure to exhaust administrative remedies under the URA, which they are not, they have failed to plead facts plausibly showing that they are entitled to such excuse.

To summarize the Court's findings as to Count I, because the URA does not create a federal right of action under either the relocation assistance policies of Subchapter II or the land acquisition policies of Subchapter III, this Court lacks original subject matter jurisdiction over Count I pursuant to 28 U.S.C. § 1331. Although the Court may exercise review jurisdiction over relocation assistance determinations under the APA generally, Plaintiffs have failed to allege a final agency action sufficient to trigger such jurisdiction. Because Plaintiffs were required to exhaust administrative remedies under the URA, failed to do so, and cannot be excused from such failure by reason of futility, the Court lacks review jurisdiction under the APA. Additionally, the Court further finds that, even if the Court could exercise jurisdiction pursuant to the APA, Plaintiffs have failed to state a claim upon which relief can be granted because Plaintiffs allege no

facts concerning advisory relocation assistance under § 4625 and Plaintiffs failed to apply for monetary relocation assistance under § 4622, as required by § 4633 and its corresponding regulations. Therefore, the Court grants Defendants' motions to dismiss Count I pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

To the extent that the remaining counts rely on the existence of a federal right to pre-deprivation benefits under the URA, no such right exists and the Court lacks jurisdiction over such counts pursuant to 28 U.S.C. § 1331. The land acquisition policies of the URA "create no rights or liabilities" and therefore cannot serve as the basis for the remaining claims. Similarly, although the relocation assistance policies of the URA do create certain pre-deprivation benefits, the APA is the exclusive remedy for alleged violations of such rights. See, e.g., Ackerley, 881 F.2d at 993. The Court lacks jurisdiction under the APA because Plaintiffs have failed to allege a final agency action concerning such benefits. Additionally, the few facts alleged in connection to such benefits are not enough to state a claim under Subchapter II of the URA. Because the Court lacks jurisdiction over Count I and, to the extent it could exercise jurisdiction, Plaintiffs have failed to state a claim upon which relief can be granted, any benefits available under Subchapter II cannot serve as the basis

for the remaining claims because the Court lacks jurisdiction to review such benefits and because Plaintiffs have failed to plead sufficient facts showing that they were denied such benefits. See id. (holding that a district court lacks jurisdiction under 42 U.S.C. § 1983 to consider claims for which the APA is the exclusive remedy).

To the extent the remaining counts rely on rights alleged to arise under the URA, the Court dismisses such counts for lack of jurisdiction under 12(b)(1). However, while the remaining counts incorporate by reference the alleged URA violations, such counts are not limited by their language to only those allegations. To the extent they seek to assert claims independent of the URA's provisions, the Court will consider each count in turn.

### C. Counts II, III, and IV

As a threshold matter, this Court finds that it has original subject matter jurisdiction over Counts II, III, and IV pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Such federal question jurisdiction exists "when a federal right or immunity forms an essential element of the plaintiffs' claim … [and] when the federal law creates the cause of action." Verizon, 377 F.3d at 362 (internal citations

omitted). Counts II and III allege violations of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and of the Equal Protection Clause of the Fourteenth Amendment, which give rise to federal constitutional rights. Count IV is pled under federal statutes that create causes of action, that is 42 U.S.C. §§ 1983 and 1985.[18] Provided each count properly states a claim upon which relief can be granted independent of any alleged rights under the URA, this Court may exercise original subject matter jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

### i. Count II – Due Process

Count II alleges that Defendants knowingly violated Plaintiffs' substantive and procedural due process rights under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. The Due Process Clauses of both Amendments respectively provide that neither the federal nor state governments shall deprive any person "of life, liberty, or property without due process of law." U.S. Const. amend. V; see

---

[18] Count IV also alleges a right to recover attorneys' fees under 42 U.S.C. § 1988(b). The Court has discretion to award such attorneys' fees "in any action or proceeding to enforce" civil rights under certain federal statutes. 42 U.S.C. § 1988(b). Section 1988 does not provide a standalone cause of action for recovery of attorneys' fees. The only civil rights statutes authorized by § 1988(b) and alleged in the Complaint are 42 U.S.C. §§ 1983 and 1985. Id. Therefore, unless a cause of action is stated pursuant to these statutes, Count IV must be dismissed because "§ 1988 does not authorize a court to award attorney's fees except in an action to enforce the listed civil rights laws." N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc., 479 U.S. 6, 12 (1986).

also U.S. Const. amend. 14, § 1. Due process of law, in our constitutional scheme, is divided into two prongs: substantive due process and procedural due process. Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995).

To state a procedural due process claim, Plaintiffs must demonstrate: "(1) they had property or a property interest (2) of which [Defendants] deprived them (3) without due process of law." Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 826 (4th Cir. 1995). To state a substantive due process claim, Plaintiffs must demonstrate: "(1) that they had property or a property interest; (2) that [Defendants'] deprived them of this property or property interest; and (3) that [Defendants'] action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Sylvia, 48 F.3d at 827 (citing Love, 47 F.3d at 122)). Substantive due process is "a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding 'the fairness of the procedures used to implement them.'" Love, 47 F.3d at 122 (quoting Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990)).[19]

---

[19] Additionally, the Fourth Circuit has held that "[t]he protection of substantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Sylvia, 48

Thus, to state either a procedural due process claim or a substantive due process claim, Plaintiffs must allege a property or liberty interest of which Defendants have deprived them. The only such interests alleged in the Complaint are Plaintiffs' liberty and property interests in Clear Sky Car Wash, which Plaintiffs allege include "interests arising under the [URA]." (Compl. ¶ 195). Plaintiffs plead no facts suggesting that they have been deprived of their property or liberty interests in the Land and business comprising Clear Sky Car Wash. On the contrary, as of the time that briefing for all pending motions to dismiss had concluded, Plaintiffs remained in possession of the Land and continued to operate the business despite the instant litigation and the remanded Certificate of Take. Thus, although Plaintiffs have constitutionally protected interests in Clear Sky Car Wash, Plaintiffs fail to allege that Defendants have deprived them of those interests.[20]

---

F.3d at 827 (quoting Rucker v. Harford Cnty., 946 F. Supp. 278, 281 (4th Cir. 1991)).

[20] The Court notes that Defendant City, through counsel, filed a status letter in this action on November 5, 2012. (Docket No. 44). Attached thereto was a copy of a letter, dated October 31, 2012, from Defendant City to Plaintiffs' counsel providing Plaintiffs with thirty (30) days notice to vacate Clear Sky Car Wash. (Docket No. 44-1). Plaintiffs' counsel filed a response letter on November 8, 2012, reiterating Plaintiffs' position as stated in their response briefs to the pending motions to dismiss. (Docket No. 45). And Defendant City filed a brief reply letter on November 14, 2012 clarifying its prior filing. (Docket No. 46). Nothing more has been filed indicating that Plaintiffs have, in fact, been compelled to vacate Clear Sky Car Wash. Therefore, despite the parties' recent filings, the Court still has nothing before it suggesting that Plaintiffs have been deprived of

Instead, Plaintiffs allege that they are entitled to certain pre-deprivation rights of which Defendants have deprived them by failing to comply with the URA's policies. However, Plaintiffs do not have a constitutionally protected right to any pre-deprivation benefits under the Due Process Clause of the Fifth and Fourteenth Amendments. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to [such a benefit]." Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)) (internal quotation marks omitted). An entitlement is not created by the United States Constitution.

their constitutionally protected interest in Clear Sky Car Wash as of the date of this Opinion and Order. Furthermore, even if Defendants have deprived Plaintiffs of their property interest in Clear Sky Car Wash, such deprivation would not run afoul of procedural due process because, when the only alleged deprivation "is effectively a physical taking, an inverse condemnation action for just compensation (which is clearly available … under state law) provides all the process to which [Plaintiffs are] due." Presley v. City of Charlottesville, 464 F.3d 480, 489 (4th Cir. 2006). Additionally, because such a post-deprivation procedure is constitutionally sufficient to protect Plaintiffs property and liberty interests in Clear Sky Car Wash, a deprivation of those interests under federal or state eminent domain power would not violate Plaintiffs' substantive due process rights, as a violation of those rights requires an action "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any [procedural remedy]…." Sylvia, 48 3d. at 827 (quoting Rucker, 946 F. Supp at 281)). Thus, even if Defendants have taken Clear Sky Car Wash, thereby depriving Plaintiffs of their property and liberty interests in Clear Sky Car Wash under the power of eminent domain, such deprivation does not violate substantive due process so long as adequate post-deprivation procedures are available.

_Id._ "Rather, [entitlements] are created and their dimensions are defined by existing rules or understandings that stem from an independent source…." _Id._ (quoting <u>Paul v. Davis</u>, 424 U.S. 693, 709 (1976)). The only source identified in Plaintiffs' Complaint defining pre-deprivation benefits is the URA. And the Court has found that the URA does not give rise to an independently enforceable federal right. Thus, Plaintiffs do not have an entitlement to pre-deprivation benefits under the URA giving rise to a constitutionally protected property interest. At most, Plaintiffs had a unilateral expectation of receiving certain benefits under the URA and such an expectation is not enough to create a property interest enforceable under the Due Process Clause of the Fifth and Fourteenth Amendments. Because Plaintiffs have not been deprived of their property and liberty interests in Clear Sky Car Wash and because Plaintiffs had no constitutionally protected property interest in benefits described in the URA, Count II fails to state a claim upon which relief can be granted and such count is dismissed pursuant to Rule 12(b)(6).

### ii.  Count III – Equal Protection

Count III alleges that Defendants knowingly violated Plaintiffs' right to equal protection under the Fourteenth Amendment to the United States Constitution by "treating Plaintiffs differently than similarly situated persons based on

52

animus." (Compl. ¶¶ 200-01). The Equal Protection Clause of the Fourteenth Amendment provides that "No state shall … deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. "[T]o survive a motion to dismiss on an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that unequal treatment was the result of discriminatory animus." Equity In Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011) (citing Morrison v. Garraghy, 239 F.3d 648, 654 (4th Cir. 2001)).

Plaintiffs have failed to plead sufficient factual allegations with respect to either element. Plaintiffs plead only the barest facts regarding Defendants' alleged treatment of others "similarly situated" to Plaintiffs. Specifically, Plaintiffs allege that Defendant City began acquiring parcels of land for the Project "[n]o later than June 2010" (Compl. ¶ 41) and that Defendants failed to comply with the URA's provisions "for some or all of the commercial property in the path of the Project." (Compl. ¶ 105). These factual allegations suggest that, contrary to the legal conclusions alleged in Count III, Defendants treated Plaintiffs the same as others who were similarly situated, that is, other owners of commercial property

in the path of the Project.[21] The only factual allegation in Plaintiffs' Complaint suggesting otherwise is contained in Paragraph 142, which states that "Defendants confirmed that they had previously used unit pad site values rather than square footage for appraisals related to takings." (Compl. ¶ 142). Even if the Court considers all landowners whose property has ever been taken by Defendants to be "similarly situated" to Plaintiffs for purposes of Plaintiffs' equal protection claim, such claim must still be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to plead any facts suggesting that any alleged unequal treatment was based on discriminatory animus. Where a plaintiff fails to plead facts "plausibly identifying any discriminatory intent on the part of the … decision makers," his equal protection claim must fail. <u>Equity in Athletics</u>, 639 F.3d at 108. Here, the factual allegations pled detail only the financial circumstances of the Project and Defendants' alleged motive to reduce the cost of the Project. (Compl. ¶¶ 55-79). There are no facts offered to plausibly establish that any defendant acted with discriminatory intent

---

[21] Plaintiffs suggest in their responsive briefs that Defendants complied with the provisions of the URA as to some properties in the path of the Project but not others. The Court does not consider this allegation because Plaintiffs failed to make it in the Complaint. The Court may not consider factual allegations outside of the pleadings when ruling on a motion to dismiss. Fed. R. Civ. P. 12(d). Furthermore, the Court declines to convert such motion to a motion for summary judgment on such a bare allegation.

toward Plaintiffs.[22]  To survive a motion to dismiss under Rule
12(b)(6), Plaintiffs were required to allege "enough facts to
state a claim to relief that is plausible on its face."
Twombly, 550 U.S. at 570.  "The plausibility standard is not
akin to a 'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted unlawfully."
Iqbal, 556 U.S. at 678.  In failing to set forth any facts
suggesting discriminatory animus, Plaintiffs' Complaint has not
met this standard.  As such, Count III fails to state a claim
upon which relief can be granted and must be dismissed pursuant
to Rule 12(b)(6).

Plaintiffs argue that animus is not required to state a
valid equal protection claim. (Docket No. 19 at 9 n.1).  In
support of this argument, Plaintiffs rely on the Fourth

---

[22] In one of their responsive briefs, Plaintiffs allege that one of
Defendant City's officials stated that Plaintiff Jacknin "want[ed]
everything 'gold-plated'" and further alleges that this remark
constituted "an apparent derogatory reference to [Plaintiff Jacknin's]
heritage." (Docket No. 19 at 9 n.1).  The Court declines to consider
this reference, as it was not pleaded in the Complaint and, pursuant
to Rule 12(d), the Court may not consider matters beyond the pleadings
without converting the motions to dismiss to ones for summary
judgment. Fed. R. Civ. P. 12(d).  The Court again declines to convert
the motions before it under Rule 12(d) on such a bare factual
allegation (one that does not even disclose Plaintiff Jacknin's
heritage nor the context of the allegedly derogatory remark).
Likewise, although Plaintiffs proffer that they are willing to amend
the Complaint to include this factual allegation, the Court finds that
such a bare allegation would be insufficient to plausibily establish
the requisite discriminatory animus.  See Equity in Athletics, 639
F.3d at 108.  Therefore, the Court further declines to await any such
amendment to the Complaint before considering the motions currently
before it.

Circuit's 2002 decision in Tri-County Paving, Inc. v. Ashe County, 281 F.3d 439 (4th Cir. 2002). The Court observes that more recent, published Fourth Circuit precedent expressly states that Plaintiffs must plead sufficient facts showing discriminatory animus for their equal protection claim to survive a Rule 12(b)(6) motion to dismiss. Equity in Athletics, 639 F.3d at 108. However, even if the Plaintiffs are correct in asserting that, in absence of alleged animus, the test on a motion to dismiss is whether the government action was rationally related to a legitimate government interest, the Court finds the factual allegations contained in the Complaint establish such a rational relation. As the Fourth Circuit has noted, the rational basis test is "the most deferential standard of review … under the Equal Protection Clause." Tri-County Paving, 281 F.3d at 439. Under such an inquiry, the Defendants actual motives are "irrelevant." Id. at 439. "[T]he relevant question under rational-basis review is whether local officials 'reasonably could have believed that [their] action was rationally related to a legitimate governmental interest.'" Id. (quoting Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 290 (4th Cir. 1998)). Conserving government resources is certainly a legitimate government interest. See, e.g., Mitchell v. Apfel, 19 F. Supp. 2d 523, 529 (W.D. N.C. 1998) (collecting cases). Thus, even if Plaintiffs

56

were not required to plead specific facts showing discriminatory animus, they have failed to state an equal protection claim upon which relief can be granted because the factual allegations contained in the Complaint supply a rational basis for Defendants' actions. Tri-County Paving, 281 F.3d at 439 (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Therefore, Count III is dismissed pursuant to Rule 12(b)(6).

### iii. Count IV - Civil Rights Actions

Count IV alleges rights of action under 42 U.S.C. §§ 1983 and 1985, as well as a right to attorneys' fees under 42 U.S.C. § 1988. As noted above, the Court may exercise original jurisdiction pursuant to 28 U.S.C. § 1331 over such claims because "federal law creates the cause of action." Verizon, 377 F.3d at 362. The Court also notes that Congress has expressly provided for jurisdiction over such claims in 28 U.S.C. § 1343 and the Court may exercise jurisdiction on this basis to the extent the allegations in Count IV state plausible claims entitling plaintiffs to relief. See Fed. R. Civ. P. 8(a)(2); see also Twombly, 550 U.S. at 570. Although it has jurisdiction over Count IV, this Court finds for the reasons set forth below, that Count IV fails to state a claim upon which relief can be granted and thus should be dismissed pursuant to Rule 12(b)(6).

Section 1983 provides a federal statutory remedy for deprivations of rights secured by the United States Constitution and federal statutes. _Philips v. Pitt Cnty. Mem'l Hosp._, 572 F.3d 176, 180 (4th Cir. 2009). It provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983. To allege an action under § 1983, a party must prove that the charged state actor "(1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." _Philips_, 572 F.3d at 180 (citing _Adickes v. S.H. Kress & Co._, 398 U.S. 144, 150 (1970)).

Section 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." _Baker v. McCollan_, 443 U.S. 137, 144 n.3 (1979). The only sources of alleged federal rights identified in Plaintiffs' Complaint are the URA, the Due Process Clause of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. Because

the Court has found that no federal rights exist under the land acquisition policies of the URA, and Plaintiffs have failed to sufficiently plead any federal rights arising under the relocation assistance policies of the URA, no federal rights are alleged under the URA that support a § 1983 claim. Similarly, because Plaintiffs have failed to state claims under the Due Process Clause of the Fifth and Fourteenth Amendments and under the Equal Protection Clause of the Fourteenth Amendment, neither constitutional provision supports a claim for relief under § 1983. Because Plaintiffs allege no other federal rights, and because §1983 does not provide redress for violations of state law, Plaintiffs have failed to state a claim under § 1983 upon which relief can be granted and Count IV's § 1983 claim is therefore dismissed pursuant to Rule 12(b)(6).

Count IV also alleges a cause of action under 42 U.S.C. § 1985(3), which provides a federal statutory remedy for conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To survive a motion to dismiss when a conspiracy is alleged, a plaintiff must plead facts showing "more than 'parallel conduct and a bare assertion of conspiracy…. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to

show illegality.'" A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Twombly, 550 U.S. at 556–57). Such "factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." Id.

Additionally, to state a claim under 42 U.S.C. § 1985(3), a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

A Soc'y Without a Name, 655 F.3d at 346 (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)). The Fourth Circuit has expressly held that a plaintiff alleging a § 1985 conspiracy is required to "show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." Id. (alterations in original). When no concrete factual allegations are offered to support such a meeting of the minds among defendants, the § 1985(3) claim must fail. Id. at 346-47. Although Plaintiffs allege that Defendants each participated in the Project, either directly or through the provision of financial assistance, Plaintiffs fail to plead any concrete facts showing an agreement among Defendants to violate Plaintiffs' constitutional rights. "At most, [Plaintiffs'] allegations amount to 'parallel conduct and a bare assertion of

a conspiracy.' This is not enough to survive a motion to dismiss." Id. at 347 (quoting Twombly, 550 U.S. at 556) (internal citation omitted). Additionally, as observed in the Court's discussion of Plaintiffs' Equal Protection claim in Count III, Plaintiffs have failed to allege any facts showing that Defendants were "motivated by a specific class-based, invidiously discriminatory animus" in any of their alleged interactions with Plaintiffs. Id. at 346 (quoting Simmons, 47 F.3d at 1376). For these reasons, Count IV fails to state a claim under 42 U.S.C. § 1985(3) and is dismissed pursuant to Rule 12(b)(6).

Section 1988(b) provides for the recovery of attorneys' fees under limited circumstances. As noted above, § 1988(b) does not provide a standalone cause of action for attorneys' fees. Crest St. Cmty. Council, 479 U.S. at 12. Rather, it gives district courts discretion to award such fees only in the context of properly pled civil rights actions, including those alleged under §§ 1983 and 1985. Because Plaintiffs have failed to state a claim under §§ 1983 and 1985 and because Plaintiffs have failed to plead any other civil rights action for which § 1988(b) authorizes the recovery of attorneys' fees, the Court cannot award Plaintiffs attorneys' fees under § 1988(b) and this aspect of Count IV must be dismissed. Fed. R. Civ. P. 12(b)(6).

In light of the above findings, Count IV is dismissed in its entirety for failure to state a claim upon which relief can be granted.

### D. Counts V and VI – Breach of Contract and Equitable Estoppel

Counts V and VI allege causes of action under Virginia common law principles for breach of contract and equitable estoppel. Plaintiffs acknowledge "that jurisdiction for these two causes of action is purely supplemental." (Docket No. 19 at 13 n.2). Title 28 U.S.C. § 1367(a) gives district courts supplemental jurisdiction in "any civil action of which the district courts have original jurisdiction … over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction is a discretionary doctrine. Gibbs, 383 U.S. at 726. It "need not be exercised in every case in which it is found to exist." Id. If the claims over which a district court has original jurisdiction are dismissed before trial, "the state claims should be dismissed as well." Id. Such dismissal is appropriate because district courts should avoid "[n]eedless decisions of state law … both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id. Because the Court

has dismissed Counts I through IV, the only counts alleging this Court's original jurisdiction, the Court finds that dismissal of Counts V and VI is appropriate pursuant to the Supreme Court's guidance in Gibbs, 383 U.S. 715.[23]

## V.    CONCLUSION

For all of the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED**.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to counsel of record for the parties.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
United States District Judge

Norfolk, Virginia
December 18 , 2012

---

[23] Although the Court dismisses Count V on jurisdictional grounds, it expresses doubt as to whether such count states facts showing that Plaintiffs are entitled to relief. See Fed. R. Civ. P. 8(a)(2). In order to create a legally binding contract under Virginia law, "the parties must have a distinct intention common to both and without doubt or difference" to be bound and any agreement entered into with such intention "must be definite and certain as to its terms and requirements; it must identify the subject matter and spell out the essential commitments and agreements with respect thereto." Dodge v. Trs. of Randolph-Macon Women's Coll., 276 Va. 1, 5 (2008) (quoting Progressive Constr. v. Thumm, 209 Va. 24, 30-31 (1968)). Here, Plaintiffs fail to allege any facts showing a common intention among Plaintiffs and Defendants to be bound. The Court agrees with Defendant City that the facts alleged, at best, describe negotiations between the parties that did not result in a final meeting of the minds sufficient to create a legally enforceable agreement.